IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

               Plaintiff,

       v.

JASON HAMILTON,

               Defendant.

No. CR 05-478-MO

OPINION AND ORDER

**MOSMAN, J.,**

       Defendant Jason David Hamilton moves to suppress all evidence obtained as a result of a

search warrant executed on November 4, 2003.  Mr. Hamilton contends that suppression is

proper because the affidavit in support of the search warrant contained evidence obtained in

violation of his Fourth Amendment rights.  This evidence included his employment and power

records and a piece of a marijuana leaf taken from his garbage.  Mr. Hamilton argues that, under

the Fourth Amendment, the government cannot acquire employment and power records

constitutionally without search warrants supported by probable cause.  Here, Drug Enforcement

Agency ("DEA") Agent Eric Christenson obtained Mr. Hamilton's records via administrative

PAGE 1 - OPINION AND ORDER

subpoenas.  Mr. Hamilton also argues that the Fourth Amendment requires a search warrant in order to retrieve evidence lawfully from curbside garbage cans.  Here, Agent Christenson took items from Mr. Hamilton's garbage without a search warrant.

Additionally, Mr. Hamilton moves for suppression since, even if Agent Christenson obtained some or all of the above-described evidence lawfully, the affidavit fails to set forth probable cause to search.  Finally, Mr. Hamilton moves for a *Franks* hearing because the affiant, Agent Christenson, made two omissions of material fact in the search warrant affidavit.  The affidavit failed to note the monetary value of the trade-in car involved in Mr. Hamilton's purchase of a 2004 Honda, and it did not mention that the car dealer reported the cash portion of the sale to the IRS as required by law.  Because Agent Christenson obtained all of the evidence contained in the affidavit lawfully and the warrant affidavit sets forth a substantial basis for concluding that probable cause existed, this court DENIES Mr. Hamilton's motion (#15) to suppress.  Furthermore, because redacting and adding information to the search warrant affidavit in accordance with Mr. Hamilton's claims in his motion (#13) for a *Franks* hearing does not change the probable cause determination, this court DENIES Mr. Hamilton's motion for a *Franks* hearing.

I.    BACKGROUND

Agent Christenson began investigating Mr. Hamilton in August of 2004 because he suspected Mr. Hamilton was involved in drug trafficking activities.  Christenson Aff. at p. 10.  In the course of the investigation, perhaps at the very outset, Agent Christenson learned that in May 2004 Mr. Hamilton purchased a 2004 Honda that cost $29,168.00.  *Id.*  As Agent Christenson

noted in his affidavit in support of the search warrant, Mr. Hamilton made the initial purchase

"with a trade-in vehicle and two cash payments totaling $6,000.00" and paid the remaining

balance of $8,581.00 later that same month in cash.  *Id.*

Agent Christenson then subpoenaed records from the Oregon Employment Division

("OED").  *Id.*  These records, which spanned from 1999 to August 19, 2004, identified Mr.

Hamilton's wages as reported by employers in Oregon.  *Id.*  Agent Christenson's review of Mr.

Hamilton's records identified wages of $2,793.98 for the period of January 2003 through June

2003.  *Id.*

Because Agent Christenson did not believe the reported wages were enough to enable Mr.

Hamilton's purchase of the 2004 Honda, he started surveillance on Mr. Hamilton's home.  *Id.*

This surveillance included running criminal background checks on visitors to Mr. Hamilton's

house.  On August 19, 2004, Agent Christenson observed a 1992 Nissan Pathfinder parked in

front of Mr. Hamilton's home and ran a records check on it.  *Id.* at pg. 11.  The check revealed

that Chris Lucido, a man with a criminal record including a 1998 conviction for marijuana

possession, was the registered owner of the Pathfinder.  *Id.*  Agent Christenson also learned that

Mr. Lucido was suspected of maintaining a marijuana grow operation in the summer of 2003 and

that a cooperating defendant reported watching a videotape in the spring of 2003 that showed Mr.

Lucido standing next to a marijuana grow.  *Id.*  Surveillance on August 24, 2004 identified a

2002 Isuzu SUV registered to Deirde Noreen and Harold David Lees.  A criminal background

check on Mr. Lees showed a criminal history with approximately 43 arrest cycles, the most

recent in 2000.  *Id.* at pg. 13-14.

PAGE 3 - OPINION AND ORDER

Also on August 24, 2004, Portland General Electric ("PGE") responded to an administrative subpoena requesting subscriber and power consumption information for Mr. Hamilton's home for the last eleven months.  *Id.* at pg. 15.  In its response, PGE also included, per Agent Christenson's request, the power consumption records of four neighbors' homes and the power consumption records of the previous resident(s) of Mr. Hamilton's house.  *Id.*  Agent Christenson contrasted these power records with Mr. Hamilton's usage and noticed that Mr. Hamilton's monthly power consumption was thousands of KWH more than his neighbors and any previous resident(s).  *Id.*  Later, on November 1, 2004, Agent Christenson received Mr. Hamilton's power records for September and October 2004.  *Id.* at pg. 21.  Despite noticing a sharp drop in usage, Agent Christenson noted that the usage was still "elevated compared to the previous occupants and compared to like residences."  *Id*.  Because "indoor cannabis growers" often use 400 to 1,000 watt lights "to simulate the photo properties of the sun," Agent Christenson believed that Mr. Hamilton's high power consumption was indicative of a marijuana grow.  *Id.* at 16.

During his investigation, Agent Christenson twice looked for evidence of crime in Mr. Hamilton's trash.  On October 25, 2004, Agent Christenson and a partner grabbed two trash bags out of Mr. Hamilton's trash can and found two small empty baggies, a small amount of marijuana, and the address of Damien Ritter.  *Id.* at pg. 19.  Mr. Ritter's criminal record included a 1996 conviction for possession of marijuana and drug paraphernalia.  *Id.* at pg. 20.  On November 1, 2004, Agent Christenson and his partner returned to Mr. Hamilton's street and grabbed more trash from Mr. Hamilton's curb.  *Id.* at pg. 21.  This inspection, however, failed to yield any inculpatory evidence.

PAGE 4 - OPINION AND ORDER

Because of (1) the elevated power usage at Mr. Hamilton's home; (2) Mr. Hamilton's purchase of a 2004 Honda "largely with unidentified or unexplained cash sources"; (3) the presence of marijuana in Mr. Hamilton's trash; and (4) Mr. Hamilton's association with people who have criminal histories, Agent Christenson concluded that Mr. Hamilton's home contained evidence of a crime. *Id.* at pg. 23. On November 3, 2004, Agent Christenson submitted a search warrant affidavit containing the above information. United States. Magistrate Judge Janice M. Stewart issued the warrant the same day and Agent Christenson executed it the next, on November 4, 2004.

II.    DISCUSSION

    A.    <u>Motion to suppress</u>

        1.    Employment and power records

"The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (internal citations and quotations omitted). Under this analysis, it is well-settled that a person does not have a constitutionally protected reasonable expectation of privacy in information conveyed or disclosed to a third party.[1]

---

[1] *United States v. Miller*, 425 U.S. 435, 443 (1976) ("This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."); *Couch v. United States*, 409 U.S. 322, 335 (1973) ("there can be little expectation of privacy where records are handed to an accountant, knowing that mandatory disclosure of much of the information therein is required in an income tax return."); *Smith v. Maryland*, 442 U.S. 735, 744 (1979) (holding that "[w]hen [defendant] used his phone, [he] voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business.")

PAGE 5 - OPINION AND ORDER

Here, Agent Christenson directed administrative subpoenas, otherwise known as third party subpoenas, to the OED and to PGE to obtain records of Mr. Hamilton's employment history in Oregon and his home power consumption. Each party returned to Agent Christenson the information as requested. Agent Christenson later used this information in a search warrant affidavit to support a probable cause determination.

Mr. Hamilton contends that the acquisition of this information required a warrant supported by probable cause because he had a reasonable expectation of privacy in his employment and power records. Mr. Hamilton further contends that the Fourth Amendment, even if it does not require probable cause in the context of acquiring employment and power records, does require that targets of criminal investigations receive notice, and the ability to challenge the administrative subpoena before it is executed. Thus, Mr. Hamilton argues that because the government failed to acquire a search warrant supported by probable cause and failed to give him notice of the administrative subpoenas, his employment records and power records should be suppressed.

The law, however, compels the opposite conclusion. That is, Agent Christenson did not need a warrant supported by probable cause to obtain Mr. Hamilton's employment and power records. Moreover, the Fourth Amendment does not require that targets of criminal investigations receive any notice at all before the execution of an administrative subpoena. Because it is well-settled that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities" Mr. Hamilton's claims fail. *Miller*, 425 U.S. at 443. In *Miller*, the Court held that a person has no legitimate expectation of privacy in documents and financial information "voluntarily conveyed

to the banks and exposed to their employees in the ordinary course of business." *Id.* at 442. *Miller* is directly on point and controls the resolution of whether Mr. Hamilton had any protected privacy interest in his records. Here, like the bank in *Miller*, the OED and PGE are both third party recipients of information that Mr. Hamilton revealed. As a result, Agent Christenson did not need a warrant supported by probable cause to acquire Mr. Hamilton's employment and power records.

Mr. Hamilton contends, on the other hand, that employment records are different from the information at issue in *Miller* and its progeny. He buttresses this contention by noting Oregon's strict statutory confidentiality rule.[2] This statute, Mr. Hamilton claims, is compelling evidence that an expectation of privacy in employment records is objectively reasonable. Oregon law itself, however, belies that claim. Section 657.670 specifically authorizes the disclosure of employment records to a large number of federal agencies.[3] Irrespective of what Oregon law says, however, it cannot create a protected privacy interest in the federal arena.[4] Nor is the statute, as interpreted by Mr. Hamilton, even compelling evidence of a well-settled social norm, i.e., that an expectation of privacy in employment records is objectively reasonable. Simply put, employment records cannot be meaningfully distinguished from the bank records in *Miller*.

---

[2] "Information secured from employing units, employees or other individuals pursuant to this chapter: (a) [s]hall be confidential and for the exclusive use and information of the Director of the Employment Department in the discharge of his duties and shall not be open to the public. . . ." Or. Rev. Stat. § 657.665(1).

[3] "Notwithstanding O.R.S. § 657.665, the Director of the Employment Department shall . . . (2) make available, upon request, to any agency of the United States charged with the administration of public works . . ."). Or. Rev. Stat. § 657.670

[4] *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1373 (9th Cir. 1987) ("[T]he admissibility of evidence in federal court is governed by federal rather than state standards.").

Thus, like bank records, the Fourth Amendment does not protect Mr. Hamilton's employment records.

Mr. Hamilton also argues that power records are different. He relies on *Kyllo v. United States*, 533 U.S. 27 (2001) for the proposition that a person has a reasonable expectation of privacy in his power records because the information from the records is legally indistinguishable from the power information protected by the Fourth Amendment in *Kyllo*. The manner in which the information was obtained in *Kyllo* (a thermal-imaging device), however, bears no resemblance to obtaining power data from a third party by way of an administrative subpoena. Crucial to the *Kyllo* holding was the intrusion on the home by "sense-enhancing technology . . . not in general public use." *Id.* at 34. Thus, while the information obtained may be similar, the means to obtaining the information is legally significant and defeats Mr. Hamilton's argument. Instead, *Smith v. Maryland*, a case in the *Miller* line, is on point. There the court held that "[w]hen [defendant] used his phone, [he] voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business" and therefore did not have an objectively reasonable expectation of privacy in that information. *Smith*, 442 U.S. at 744. Similarly, when Mr. Hamilton used power in his home, he voluntarily conveyed that information to PGE, his electric company. As a result, he had no reasonable expectation of privacy in his power records.

Mr. Hamilton's final argument for the suppression of his employment and power records centers on notice. He relies on *In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000) for his contention that, "where evidence is seized without a prior opportunity for an individual to challenge the seizure, that seizure must be authorized by a warrant supported by probable cause."

PAGE 8 - OPINION AND ORDER

Def.'s Mem. in Supp. of Mot. to Suppress at 8.  First, this court is not faced with a seizure

implicating the Fourth Amendment.  Second, *In re Subpoena Duces Tecum* only stands for the

proposition that "the person *served with the subpoena* may challenge it in court before complying

with its demands."  228 F.3d. at 348 (emphasis added); *see also See v. City of Seattle*, 387 U.S.

541, 544 (1967) (recipients of administrative subpoenas are afforded Fourth Amendment

protections).  As a result, Mr. Hamilton has neither standing to challenge the administrative

subpoenas at issue nor the constitutional right to notice before the execution of the subpoenas.

2.      Evidence found in the garbage

"An expectation of privacy does not give rise to Fourth Amendment protection . . . unless

society is prepared to accept that expectation as objectively reasonable."  *California v.

Greenwood*, 486 U.S. 35, 39-40 (1988); *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan,

J., concurring).  In *Greenwood,* the Supreme Court held that a person has no objectively

reasonable expectation of privacy in his sealed, opaque garbage bags left outside for collection.

486 U.S. at 40.  Because "garbage bags left on or at the side of a public street are readily

accessible to animals, children, scavengers, snoops, and other members of the public" it is not

reasonable to expect the content of the bags to remain private.  *Id.*  Thus, it is not a search if

police go rifling through a person's curbside trash, nor it is a seizure if the police decide to take

some items from the garbage.  In other words, the Fourth Amendment does not protect garbage

left at the curb for collection.

Here, Agent Christenson inspected Mr. Hamilton's garbage and found two small empty

baggier, a small amount of marijuana, and the address of Damien Ritter who had been convicted

in 1996 for possession of marijuana and drug paraphernalia.  Agent Christenson later used this information in a search warrant affidavit to support a probable cause determination.

Mr. Hamilton contends that *Greenwood* is no longer controlling in this case because (1) he placed his garbage in a fastened container as opposed to a bag, creating an objectively reasonable expectation of privacy, (2) *Kyllo* radically undercut *Greenwood*'s conceptual underpinnings, and (3) recent social and legal developments in response to identity theft call for a re-examination of *Greenwood*.  Each of these arguments fails.  *Greenwood* controls and leads to the conclusion that Agent Christenson's inspection and removal of Mr. Hamilton's garbage did not violate Mr. Hamilton's constitutional rights.

a.      The objective expectation of privacy in garbage

Mr. Hamilton contends that his case is factually distinguishable from *Greenwood* because he placed his garbage in sealed bags inside of sealed containers as opposed to sealed bags.  This factual difference, he contends, is significant because the garbage is no longer readily accessible to children and animals.  As a result, Mr. Hamilton claims that the placement of garbage in a sealed container gives rise to an objectively reasonable expectation of privacy.

Mr. Hamilton is correct that the facts of this case and *Greenwood* are distinguishable, but the distinction between the chosen receptacle for garbage is not significant.  Here and in *Greenwood*, the defendant placed his garbage at the curbside in a sealed, opaque receptacle.  Under *Greenwood*, however, the two receptacles, a bag and a container, are functionally identical.  In both cases, the garbage is "readily accessible to . . . scavengers, snoops, and other members of the public."  *Greenwood*, 486 U.S. at 40.  Moreover, Mr. Hamilton, like the defendant in *Greenwood*, placed his "refuse at the curb for the express purpose of conveying it to a third party,

PAGE 10 - OPINION AND ORDER

the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so." *Id.*  Thus, the mere fact that Mr. Hamilton's garbage was less accessible to children and animals is not enough to escape the reasoning of *Greenwood* and give rise to an objectively reasonable expectation of privacy.

        b.    *Kyllo*'s impact on the *Greenwood* decision

Mr. Hamilton contends that *Kyllo* dramatically undermines the conceptual underpinnings of *Greenwood*.  To reach this conclusion Mr. Hamilton claims that *Kyllo* stands for the broad proposition that when police examine materials from outside the home that permit an inference about private activities inside the home, they have conducted a search under the Fourth Amendment.[5]  The parallel between a search of garbage and using a device of advanced technology is that both "explore details of the home that would previously have been unknowable without physical intrusion."  *Kyllo*, 533 U.S. at 40.  Thus, Mr. Hamilton argues, both methods qualify as searches under the Fourth Amendment and are "presumptively unreasonable without a warrant."  *Id.*

It is not necessary to determine the exact scope of *Kyllo* to come to the conclusion it does not undercut *Greenwood* to the extent that Mr. Hamilton suggests.  Instead, Justice Scalia's *Kyllo* opinion and its reliance on the case's unique facts squarely rebut Mr. Hamilton's arguments.  The question presented in *Kyllo* was "whether the use of a thermal-imaging device aimed at a private home from a public street to detect relative amounts of heat within the home constitutes a 'search'

---

[5]This proposition would not only call into question *Greenwood*, but numerous other types of warrantless searches or acquisitions of information established as lawful by the Supreme Court.  Examples include searches under the plain view doctrine and information in the hands of third parties like the phone records in *Smith*.

PAGE 11 - OPINION AND ORDER

within the meaning of the Fourth Amendment."  *Id.* at 29.  The Court held that "obtaining by *sense-enhancing technology* any information regarding the interior of the home that could not otherwise have been obtained without physical intrusion into a constitutionally protected area, constitutes a search-at least where . . . the technology in question is *not in general public use*." *Id.* at 34 (internal citation and quotation marks omitted) (emphasis added).

The decision's reliance on the technology used and the fact the technology was not in general public use is important.  Those two factors prompted the court to determine that the defendant had an objectively reasonable expectation of privacy.  In other words, had the thermal imaging system in *Kyllo* been in general public use at that time, there probably would not have been an objectively reasonable expectation of privacy in the heat levels of the home.  Hence, like police collecting evidence by flying helicopters and airplanes over homes, using the thermal imaging device would not have constituted a search.  *See Florida v. Riley*, 488 U.S. 445 (1989); *Ciraolo*, 476 U.S. 207.  Accordingly, *Kyllo*, like *Greenwood* and many other cases before it, reinforces the principle that "[t]he touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy."  *Ciraolo*, 476 U.S. at 211 (internal citation and quotation marks omitted).

Here, Agent Christenson used his hands to pick through Mr. Hamilton's trash.  He did not use any technological device not in the general public use to obtain information about the inside of Mr. Hamilton's home.  Thus, whatever affect *Kyllo* may have on Fourth Amendment doctrine, it does not establish Fourth Amendment protections for curbside trash.  That Mr. Hamilton's garbage offered a glimpse into his home and private life is of no consequence to the

PAGE 12 - OPINION AND ORDER

determination of whether he had a reasonable expectation of privacy in it.  Consequently, *Kyllo* does not affect the final analysis that *Greenwood* controls the outcome of this case.[6]

Finally, *Miller* and its progeny buttress the reasoning in *Greenwood* and remain unaffected in total by *Kyllo*.  In *Miller*, the Court held that a person has no legitimate expectation of privacy in documents and financial information "voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business."  425 U.S. at 442.  *Miller* also noted that "[t]his Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party . . . even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."  *Id.* at 443; *see also Smith*, 442 U.S. at 744 (holding that "[w]hen [defendant] used his phone, [he] voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business.")  When Mr. Hamilton left his garbage on the curbside, he was voluntarily conveying it and all of its information to a third party.  Thus, even if Mr. Hamilton had a reasonable expectation of privacy in his garbage at one point, following *Greenwood* and *Miller*, Fourth Amendment protections rescinded when he put the garbage on the curb.

---

[6] In addition, the *Kyllo* majority, while not discussing *Greenwood* directly, left a clear implication that the decision stands in whole by rejecting the dissenters analogy between discarded garbage and heat emanating from the home.  The dissenters argued that in either case "the only conclusions the officers reached concerning the *interior* of the home were . . . indirect" and that while the equipment did "pick up details of the home that were exposed to the public, it did not obtain any information regarding the interior of the home."  *Kyllo*, 533 U.S. at 44 (Stevens, J., dissenting) (internal citations and quotations omitted) (emphasis in original).  The majority retorted by stating that the "dissent's repeated assertion that the thermal imaging did not obtain information regarding the interior of the home . . . is simply inaccurate" and "[t]he fact that equivalent information could sometimes be obtained by other means does not make lawful the use of means that violate the Fourth Amendment."  *Id.* at 35 n. 2.

PAGE 13 - OPINION AND ORDER

c.    Identity theft

Mr. Hamilton's final argument is that recent social and legal developments in response to identity theft call for a re-examination of *Greenwood*.  Of course, the re-examination of *Greenwood* is up to a different court.  The existence of identity theft itself, however, supports denying Mr. Hamilton's motion to suppress.  As opposed to creating a reasonable expectation of privacy in garbage, the widespread problem of identity theft only adds to likelihood that person's trash is not safe from inspection.  The danger of placing private information in the garbage is now amplified and calls into question the claim that society is prepared to recognize a person's expectation of privacy in their trash as reasonable.  Moreover, the existence of state and federal identity theft statutes, Or. Rev. Stat. § 165.800 and 18 U.S.C. § 1028(a)(7), do not lend support to Mr. Hamilton's argument.  Neither of the statutes makes investigation of garbage a crime, invokes notions of privacy in garbage, or mentions garbage at all.  Consequently, the problem of identity theft buoys *Greenwood*'s conceptual underpinnings and strengthens its control of this case.  *Greenwood's* control compels the conclusion that Agent Christenson did not violate the Mr. Hamilton's constitutional rights when he retrieved evidence from Mr. Hamilton's garbage.

B.    Probable cause

Probable cause is a flexible, common-sense standard.  *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983).  A determination of probable cause is not an examination of each fact independent of the context in which the fact is found.  Instead, facts are taken together to form the basis of a totality of the circumstances analysis.  *Id.*  In other words, "[a]lthough each piece of evidence in isolation might not suffice to demonstrate probable cause, together . . . evidence [can] establish[] an adequate basis to conclude" that probable cause exists.  *United States v.*

PAGE 14 - OPINION AND ORDER

*Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003).  In determining whether probable cause exists, a magistrate may draw reasonable inferences about the likely location of evidence "based on the nature of the evidence and the type of offense."  *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).  He need not determine that the evidence sought is in fact on the premises to be searched or that the evidence is more likely than not to be found where the search takes place.  The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.  *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985). Moreover, "a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found."  *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987).

"[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236.  Furthermore, "[i]n reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit."  *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985).  In sum, reviewing courts accord great deference to a magistrate's determination of probable cause to issue a search warrant and reverse only if that determination is clearly erroneous.  *United States v. Espinosa*, 827 F.2d 604, 610 (9th Cir. 1987).  "In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it."  *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir. 1978).

PAGE 15 - OPINION AND ORDER

Here, Agent Christenson offered his conclusions, buoyed by considerable experience in the investigation of marijuana grows and criminal activity associated with marijuana trafficking. These conclusions combined with Mr. Hamilton's increased power consumption, his purchase of a new car in part with large cash payments, his association with several persons with criminal histories, and the marijuana leaf found in his trash, constituted a substantial basis for concluding that a search would uncover evidence of wrongdoing. *See, e.g., United States v. Viers*, 2005 WL 555397 (D. Or. Mar. 2, 2005) (relying in part on elevated power consumption and the conclusions of an experienced DEA Agent to find probable cause). Mr. Hamilton, however, asserts that none of the evidence, whether considered separately or in combination, furnished probable cause. More specifically, Mr. Hamilton argues that Agent Christenson bases his conclusions on inferences not supported by the evidence supplied in the search warrant affidavit.

Mr. Hamilton takes issue with Agent Christenson's conclusions regarding Mr. Hamilton's ability to purchase the 2004 Honda. Mr. Hamilton contends that the information provided in the affidavit does not support the conclusion that he lacked adequate lawful income to purchase the car.[7] The affidavit, Mr. Hamilton argues, fails to account for other potential sources of lawful income and only details his income for a six-month period one year before, as opposed to immediately preceding, his purchase of the car. That Agent Christenson attempt to ascertain all other potential sources of lawful income, however, is not "demanded by precedent." *United States v. Gourde*, 440 F.3d 1065, 1073 (9th Cir. 2006). Instead, "[a]n affidavit may support

---

[7] "On August 19, 2004, I subpoenaed records from the Oregon Employment Division for wages reported in the State of Oregon for Jason HAMILTON from 1999 to present (August 19, 2004). A review of the records revealed that from January, 2003 through June 2003, employers in Oregon reported HAMILTON'S wages at a total of $2,793.98. I believe the reported wages by employers does not support the income needed to purchase the 2004 Honda." Christenson Aff. at p. 10.

PAGE 16 - OPINION AND ORDER

probable cause even if the government fails to obtain potentially dispositive information." *Id.* at 1073 n. 5; *see also United States v. Miller*, 753 F.2d 1475, 1481 (9th Cir. 1985) (holding an affidavit supported probable cause even though "[i]ndependent verification could have been easily accomplished in this case" and the "officers failed to take these simple steps").  As a result, Agent Christenson's decision not to investigate whether Mr. Hamilton had other lawful sources of income does not weaken, in a totality of the circumstances analysis, his conclusion that Mr. Hamilton lacked adequate lawful income to purchase the car.

Mr. Hamilton is correct, however, that wage information presented in the affidavit is ambiguous.  That is, the affidavit does not clearly state whether the six-month period between January 2003 and June 2003 were the only six months for which records were available or whether records were available from 1999 to 2004, and only one showed earnings for this six month period.  Mr. Hamilton argues that low reported wages during January 2003 to June 2003 does not establish that he had low reported wages from June 2003 until he purchased the car in May 2004.  Contextually, this assertion is not convincing.  Technically, however, it is true that the affidavit does not unambiguously establish Mr. Hamilton's wages for the period immediately preceding his purchase of the car.  Because a reviewing court "is limited to the information and circumstances contained within the four corners of the underlying affidavit," the wage information regarding the car purchase is too ambiguous to help furnish probable cause.  *Stanert*, 762 F.2d at 778.

Next, Mr. Hamilton attacks the affidavit's conclusion that his high power usage was further evidence he was maintaining a marijuana grow operation.  He claims that his pattern of usage is not consistent with Agent Christenson's explanation of the pattern that would be

PAGE 17 - OPINION AND ORDER

expected with a marijuana grow.  Agent Christenson described three-month grow cycles with lower power consumption at the start and greater consumption towards the end.  Christenson Aff. at p. 21-22.  Thus, Mr. Hamilton claims that his power consumption records should, but do not, evince either a three-month cycle in accordance with a single grow or remain constant in accordance with a grow of multiple plants in different stages.

Even if Mr. Hamilton's power usage does not mimic a type of grow cycle set out in Agent Christenson's affidavit, the usage is sufficiently high to help support a determination that probable cause existed.  Agent Christenson offered more than just Mr. Hamilton's high usage, however.  Agent Christenson compared Mr. Hamilton's usage to the previous resident(s) of his home as well as four neighboring homes.  In each comparison, Mr. Hamilton used far more power.  In fact, during the eleven-month period covered by Agent Christenson's first administrative subpoena to PGE, Mr. Hamilton used more power than the four neighboring houses combined.  Thus, even though power consumption records alone might not furnish probable cause, the records and comparative data are probative especially when combined with other evidence provided in the affidavit.  Agent Christenson also asserted that some "growers generally maintain groups of plants in different stages of development."  Christenson Aff. at p. 16.  This would alter the three month power cycle for a single crop.

Finally, Mr. Hamilton contends that neither the marijuana leaf found nor his associations with persons with criminal histories furnish probable cause.  Mr. Hamilton continually relies on cases holding that, standing alone, certain types of evidence do not themselves furnish probable cause.[8]  He makes this argument in reference to both the marijuana found and his association with

---

[8] *United States v. Elliot*, 576 F. Supp. 1579, 1581 (S.D. Ohio 1984) ("We conclude that the discovery of the discarded contraband, *standing alone*, is insufficient to support a determination

PAGE 18 - OPINION AND ORDER

persons who have criminal histories.  Probable cause, however, is a totality of the circumstances analysis and just as the affidavit did not rely on power consumption alone to support a probable cause determination it did not look to either the marijuana found or Mr. Hamilton's associations alone to find probable cause.  Even if "each piece of evidence in isolation might not suffice to demonstrate probable cause, together . . . evidence [can] establish[] an adequate basis to conclude" that probable cause exists.  *Celestine*, 324 F.3d at 1102.  Here, it is the factual nexus of the combined evidence found in the affidavit that forms the substantial basis for concluding that a search would uncover evidence of wrongdoing.  Because the magistrate's determination that probable cause existed was not clearly erroneous, this court refuses to reverse that determination.

Furthermore,  when an officer's "reliance on [a] magistrate's determination of probable cause was objectively reasonable, an[] application of the extreme sanction of exclusion is inappropriate."  *United States v. Leon*, 468 U.S. 897, 926 (1984).  Here, the warrant was not "so facially deficient" that Agent Christenson could not "reasonably presume it to be valid" and the issuing magistrate did not "wholly abandon[] his judicial role."  *Id.* at 923.  Moreover, both this court and the magistrate determined that the search warrant affidavit furnished probable cause.  Thus,  Agent Christenson's reliance on the search warrant was objectively reasonable.

C.    *Franks* hearing

A *Franks* hearing allows a defendant to challenge the sufficiency of an affidavit supporting a search warrant.  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  The Fourth Amendment requires that a hearing be held at the defendant's request if he makes a "substantial

of probable cause.") (emphasis added); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("a person's mere propinquity to others independently suspected of criminal activity does not, *without more*, give rise to probable cause to search") (emphasis added).

preliminary showing" that (1) law enforcement officers made a false statement or omission "knowingly and intentionally, or with reckless disregard for the truth," and (2) that the statement or omission was "necessary to the finding of probable cause." *Id*.  At this stage, what is required is that the defendant makes a substantial showing that the affiant intentionally or recklessly omitted facts "required to prevent technically true statements in the affidavit from being misleading." *Stanert*, 762 F.2d at 781 ("Clear proof of deliberate or reckless omission is not required.  Such proof is reserved for the evidentiary hearing."); *see also United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005).

Mr. Hamilton contends Agent Christenson knowingly or recklessly omitted two facts: the monetary value of the car Mr. Hamilton used as a trade-in ($16,285) when he purchased the 2004 Honda for $29,168, and the fact that the car dealer reported the cash portion of the sale to the IRS as required by law.  The argument that Agent Christenson omitted the monetary value of the trade-in with reckless disregard for the truth is frivolous.  Agent Christenson specifically mentioned that Mr. Hamilton "purchased the 2004 Honda with a trade-in vehicle and two cash payments totaling $6,000" and that later Mr. Hamilton "paid the remaining balance with $8,581.00 cash."  Christenson Aff. at p. 10.  To get the value of the trade-in one can easily add the cash payments together and subtract that amount from the price of 2004 Honda.  Thus, functionally, the value of trade-in is present in the affidavit.  Nevertheless, assuming Agent Christenson knowingly or recklessly omitted the value of the trade-in, adding that information to the affidavit does nothing to change the probable cause determination.

Mr. Hamilton also contends that the averments in Agent Christenson's affidavit that he (Mr. Hamilton) made two cash payments under $10,000 for the 2004 Honda, are misleading and

PAGE 20 - OPINION AND ORDER

affected the determination of probable cause in two ways. First, the averments suggest Mr.

Hamilton intentionally made payments in such a manner as to avoid IRS reporting. Second,

without the omitted information, the affidavit creates the impression that Mr. Hamilton is a

knowledgeable drug dealer who skillfully avoided IRS reporting requirements. In fact, the

dealership did report the sale to the IRS because the dealership aggregated the cash payments.

Thus, Mr. Hamilton argues that had been a savvy drug dealer, he would have known the

dealership would aggregate payments thus necessitating a report to the IRS. Assuming that Mr.

Hamilton made a substantial preliminary showing that Agent Christenson knowingly or

intentionally omitted the fact that the Honda dealership reported the cash payments to the IRS;

was this omission necessary to establish probable cause? No, because there is no clear evidence

that Mr. Hamilton knew that the dealership was going to report the cash payments to the IRS.

Instead, there is only a letter post-dating the transaction informing Mr. Hamilton that the

dealership had filed the appropriate form with the IRS. Thus, adding into the affidavit that the

form was filed after the transaction does very little to change the probable cause determination.

What remains are multiple large cash payments under $10,000.00 that still look like an attempt to

structure. Thus, because the addition of the omitted information does not change the probable

cause determination, this court denies Mr. Hamilton's motion for a *Franks* hearing.

III.    CONCLUSION

Because Agent Christenson obtained all the information in his search warrant affidavit

lawfully and the search warrant affidavit furnished probable cause, Mr. Hamilton's motion (#15)

to suppress is DENIED. Also, because the omissions of fact do not change the probable cause

PAGE 21 - OPINION AND ORDER

determination when they are added into the search warrant affidavit, Mr. Hamilton's motion

(#13) for a *Franks* hearing is DENIED.

IT IS SO ORDERED.

DATED this   9th   day of June, 2006.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

PAGE 22 - OPINION AND ORDER